```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**LIJKEL DIJKSTRA, individually and on
behalf of other similarly situated
individuals,**

        Plaintiff,

v.                          //    CIVIL ACTION NO. 5:11CV152
                                         (Judge Keeley)

**HARRY J. CARENBAUER, HOME LOAN CENTER,
doing business as Lendingtree Loans,
HLC ESCROW, LENDERS FIRST CHOICE, ENCORE
CREDIT CORPORATION, now known as Performance
Credit Company, CHASE HOME FINANCE, LLC,
OPTION ONE MORTGAGE COMPANY, WILSHIRE
CREDIT CORPORATION, EMPIRE FIRE AND MARINE
INSURANCE COMPANY, MERRILL LYNCH MORTGAGE
LENDING, INC., LASALLE BANK, N.A., As Trustee
for MLMI Trust Services 2007 SD1, DANIEL J.
MANCINI, ESQUIRE, JOHN DOE LENDERS, LOAN BROKERS,
ASSIGNEES, LOAN CLOSERS, LOAN SERVICERS, INSPECTORS,
and APPRAISERS and/or AGENTS or EMPLOYEES THEREOF,**

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 23]**</u>

This memorandum opinion memorializes the ruling of the Court on February 3, 2012, **DENYING** the plaintiff's motion to remand.

**I.**

On November 7, 2008, the plaintiff, Lijkel Dijkstra ("Dijkstra"), filed a putative class action in the Circuit Court of Ohio County, West Virginia, alleging that the defendants, Harry J. Carenbauer ("Carenbauer"), Home Loan Center, ("HLC"), HLC Escrow, Lenders First Choice, Encore Credit Corporation ("Encore"), Chase

**DIJKSTRA v. CARENBAUER, ET AL**                                5:11CV152

**MEMORANDUM OPINION AND ORDER**

Home Finance, LLC ("Chase"), Option One Mortgage Company ("Option One"), Wilshire Credit Corporation ("Wilshire"), Empire Fire and Marine Insurance Company ("Empire"), Merrill Lynch Mortgage Lending, Inc., Lasalle Bank, N.A., Daniel J. Mancini, Esquire, as well as other unnamed parties, engaged in fraud, misrepresentation, and conversion, breached their fiduciary duties, and violated the West Virginia Consumer Credit Protection Act ("WVCCPA"), W. Va. Code § 46A-2-127, by engaging in fraudulent lending practices related to Dijkstra's home mortgage. He also claimed that the defendants who closed the loan were not licensed to practice law in West Virginia, and that those who serviced and managed the mortgage charged him unnecessary insurance premiums and unconscionable fees.

The defendants first removed the case on January 7, 2009. The Court remanded it at that time, however, because, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), the defendants had failed to establish that the putative class met the requisite numerosity and amount in controversy requirements for the exercise of federal jurisdiction. (Case No. 5:08CV187, Dkt. No. 72). The defendants again removed the case on October 28, 2011, following which Dijkstra moved to remand it on the basis that the removal was untimely (dkt. no. 23).

2

**DIJKSTRA v. CARENBAUER, ET AL**                                     **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

**II.**

According to Dijkstra, the defendants could have ascertained that the case was removable on August 19, 2011. In support of his argument, he relies on three letters he sent to the defendants, including 1) a demand that Option One pay $95,000, dated May 25, 2011 (dkt. no. 3-8 at 3-4), 2) a demand that Encore pay $316,000, dated July 27, 2011 (dkt. no. 3-8 at 5-6), and 3) a demand to Wilshire, dated August 19, 2011, proposing a settlement for 640 class members.

According to Dijkstra, the total value of his August 19th demand, which sought $1000 per class member, an additional $3000 for borrowers who had modified or reinstated loans, the cancellation of all deficiencies owed by foreclosed customers, and additional payments to class members who met other specific criteria (dkt. no. 3-8 at 7-8), exceeded $5 million.[1]

Dijkstra also argues that, based on written discovery responses exchanged on August 23 and 24, 2011, the defendants could have ascertained that damages for the putative class would exceed $5 million. That discovery included a table produced by HLC

---

[1] Dijkstra provides the following estimates: (1) $1000 per loan ($640,000); (2) $3000 for an estimated 125 borrowers who had modified or reinstated loans ($375,000); (3) cancellation of deficiencies, estimated $20,000 for 200 borrowers ($4 million); and (4) additional payments, estimated at $330,000.

**DIJKSTRA v. CARENBAUER, ET AL**                                            **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

documenting 851 instances in which non-lawyers originated or brokered loans in West Virginia (dkt. no. 23-4 at 3).[2] Dijkstra asserts this information established a class size of 851 people, and that his response to HLC's interrogatories made it clear each of the 851 class members intended to pursue maximum statutory damages:

> Plaintiff seeks a maximum statutory penalty for each violation of the West Virginia Credit and Consumer Protection Act. He will ask that the Court to [sic] find [HLC] in contempt for authorizing the unauthorized practice of law by its loan closer. He also seeks to have his loan voided and all payments his [sic] and fees he paid returned. He also seeks compensatory damages for annoyance and inconvenience, emotional distress and punitive damages, and also attorneys' fees and costs. The statutory, contempt, and compensatory damages are not readily ascertainable, but will be determined by a judge and/or jury. . . .

(Dkt. No. 23-1 at 2).

The defendants contend that neither Dijkstra's August 19th settlement demand nor his interrogatory responses established an amount in controversy exceeding $5 million. In their view, the case was not removable until September 29, 2011, which is when Dijkstra sent HLC a letter demanding $4,255,000 (dkt. no. 3-8 at 1-2). They argue that, when combined with his earlier demands, this letter put

---

[2] Dijkstra provides the following estimates: (1) a maximum statutory penalty of $4500 per violation under the § 46A-5-101(1) of the WVCCPA (as adjusted for inflation) for 841 class members ($3,829,500); (2) $250,000 total compensatory damages; and (3) $250,000 total punitive damages.

4

them on notice for the first time that Dijkstra's case exceeded CAFA's jurisdictional threshold.

Regarding the August 19th demand letter, which on its face sought only $640,000, the defendants insist they were under no duty to inquire further about the amount of any other demands. With respect to the exchange of interrogatory responses, they argue these did not include a quantitative assessment of damages, and Dijkstra's response itself conceded that "[t]he statutory, contempt, and compensatory damages are not readily ascertainable." (Dkt. No. 23-1 at 2). Thus, they contend the information in these documents was insufficient to establish federal jurisdiction under CAFA by a preponderance of the evidence, and that any attempt to remove the case before September 29, 2011, would have been based upon "mere speculation." See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 734 (4th Cir. 2009).

### III.

#### A.

A defendant may remove a case from state to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. CAFA confers original jurisdiction on district courts over class actions in which any member of a class comprised of at least one hundred

**DIJKSTRA v. CARENBAUER, ET AL**                                    **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

plaintiffs is of diverse citizenship from any defendant, and in which the amount in controversy exceeds $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d). The claims of individual class members may be aggregated to meet the $5 million amount in controversy. 28 U.S.C. § 1332(d)(6).

It is well settled that the party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). The Fourth Circuit has held that "while CAFA was intended to open the doors of the federal courts to class action litigants, its statutory language did nothing to reverse the long-settled principle that a defendant seeking to invoke a federal court's removal jurisdiction bears the burden of demonstrating that jurisdiction would be proper." Bartnikowski, 307 F. App'x at 734 (citing Strawn v. AT & T Mobility LLC, 530 F.3d 293, 297 (4th Cir. 2008)). Therefore, in this case the burden of establishing the $5 million jurisdictional threshold amount in controversy rests with the defendants.[3] See Mulcahey, 29 F.3d at 151.

---

[3] Here, the defendants argue that Dijkstra bears the burden of establishing that federal jurisdiction could have existed as of August 19, 2011 or August 24, 2011 because, by challenging the timeliness of removal, the plaintiff is actually the proponent of federal jurisdiction as of the earlier date. The case law, however, does not support this proposition.

Indeed, courts have consistently emphasized that the burden of

**DIJKSTRA v. CARENBAUER, ET AL**                             **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

Courts have consistently applied the "preponderance of the evidence" standard when determining whether a removing defendant has met its burden of establishing the amount in controversy. The well-settled test in the Fourth Circuit for calculating this amount is "'the pecuniary result to either party which [a] judgment would produce.'" Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Emps. Ins. Co. v. Lally, F.2d 568, 569 (4th Cir. 1964)). Removal jurisdiction is strictly construed; if federal jurisdiction is doubtful, the Court must remand. Mulcahey, 29 F.3d at 151.

**B.**

Untimely removal constitutes a procedural defect that renders the case improperly removed. Cades v. H&R Block, Inc., 43 F. 3d 869, 873 (4th Cir. 1994). Generally, a defendant must file a notice of removal within thirty days following receipt of the complaint. 28 U.S.C. § 1446(b)(1). However,

---

establishing federal jurisdiction is upon the party seeking removal. This is true even where a plaintiff challenges removal as untimely because the case could have been removed earlier. See, e.g. Stenger v. Carelink Health Plans, Inc., No. 5:10CV109, 2011 WL 2550850 (N.D.W. Va. June 27, 2011); Link Telecomms. v. Sapperstein, 119 F. Supp. 2d 536, 542 (D. Md. 2000); see also Kaneshiro v. N. Am. Co. Life and Health Ins., 496 F. Supp. 452, 462 (D. Hawaii 1980) (abrogated on other grounds) (explaining that the burden must remain on the defendant because he is the only party with an interest in seeking access to a federal court of limited jurisdiction).

**DIJKSTRA v. CARENBAUER, ET AL**                                          **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or <u>other paper from which it may first be ascertained that the case is one which is or has become removable</u>.

28 U.S.C. § 1446(b)(1), (3) (emphasis added).

The term "other paper" is broad enough to include most written information received by the defendant, "whether communicated in a formal or informal manner." <u>Yarnevic v. Brink's, Inc.</u>, 102 F.3d 753, 755 (4th Cir. 1996). This includes settlement demands and answers to interrogatories. <u>See</u> <u>Lovern v. Gen. Motors, Corp.</u>, 121 F. 3d. 160, 163 (4th Cir. 1997); <u>Link Telecomms. v. Sapperstein</u>, 119 F. Supp. 2d 536, 542 (D. Md. 2000).[4]

### IV.

Here, the question is whether the defendants timely removed this case on October 28, 2011, or, as Dijkstra contends, could have ascertained from pleadings and "other paper" sometime prior to September 29, 2011, that the amount in controversy exceeded $5 million.

---

[4] Of note, although 28 U.S.C. § 1446(c) generally prohibits removal based on diversity more than one year after commencement of the action, CAFA has eliminated this one-year limitation. 28 U.S.C. § 1453. Additionally, even if CAFA's threshold jurisdictional requirements are met, remand is required where the case meets certain exceptions, which are not applicable here. 28 U.S.C. § 1332(d)(4).

**DIJKSTRA v. CARENBAUER, ET AL**  5:11CV152

**MEMORANDUM OPINION AND ORDER**

The Fourth Circuit has adopted an objective test to determine the meaning of the phrase "from which it may first be ascertained" in § 1446(b)(3):

> [W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to <u>rely on the face of the initial pleading and on the documents exchanged</u> in the case by the parties to determine when the defendant had notice of the grounds for removal, <u>requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper</u>.

<u>Lovern</u>, 121 F.3d at 162 (emphasis added) (citing <u>Foster v. Mut. Fire, Marine & Inland Ins. Co.</u>, 986 F.2d 48, 53-54 (3d Cir. 1993) ("[T]he relevant test is not what the defendants purportedly knew, but what these documents said.")); <u>see</u> <u>also</u> <u>Chapman v. Powermatic, Inc.</u>, 969 F.2d 160, 163 (5th Cir. 1992) (adopting same test) ("[I]t promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know.").

Some courts applying <u>Lovern</u>'s objective test have concluded that pleadings or other paper that merely provide "a clue" removal is available trigger the thirty-day clock for timely removal. <u>See</u> <u>Stenger v. Carelink Healthplans, Inc.</u>, No. 5:10CV109, 2011 WL 2550850, at *2 (N.D.W. Va. June 27, 2011) (Stamp, J); <u>King v. Homeside Lending, Inc.</u>, No. 2:03-2134, 2007 WL 1009383, at *3

**DIJKSTRA v. CARENBAUER, ET AL**                                          **5:11CV152**

**MEMORANDUM OPINION AND ORDER**
---

(S.D.W. Va. Mar. 30, 2007) (Copenhaver, J.); and <u>Link Telecommunications</u>, 119 F. Supp. 2d at 544 (Harvey, J.). Other courts have adopted a bright-line test and rejected the notion that a defendant should have to scrutinize a case to determine removability where the initial pleading is indeterminate. See <u>Dugdale v. Nationwide Mutual Fire Insurance Co.</u>, No. 4:05CV138, 2006 WL 335628, at *6 (E.D. Va. Feb. 14, 2006).

Courts adopting the "clue" test have relied heavily on the analysis in <u>Kaneshiro v. North American Company for Life and Health Insurance</u>, 496 F. Supp. 452, 460 (D. Hawaii 1980), where the district court looked "beyond the pleadings" to determine when the thirty-day clock for timely removal begins:

> [T]here appears to be a line of support for placing on the defendant desiring removal the burden of scrutinizing the plaintiff's initial pleading, even if it is indeterminate on its face, and of removing within 30 days, at least <u>unless the initial pleading provides 'no clue' that the case is actually removable</u>.

<u>Id.</u> (emphasis added). From this perspective, "even if the other paper is 'vague,' as long as it provides at least some 'clue' that federal claims are asserted, the thirty day time period for removal begins to run." <u>Stenger</u>, 2011 WL 2550850, at *2.

In <u>Dugdale</u>, on the other hand, the court required that the grounds for removal be apparent within the four corners of the initial pleading or subsequent paper. However, a defendant could

**DIJKSTRA v. CARENBAUER, ET AL**                                              **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

not ignore other objective information establishing a federal claim that it had received in conjunction with the lawsuit. Dugdale, 2006 WL 335628 at *5.

The Fourth Circuit has never adopted Kaneshiro's "clue" test. Moreover, the Court of Appeals for the Ninth Circuit expressly rejected it in Harris v. Bankers Life and Casualty Co., 425 F.3d 689, 698 (9th Cir. 2005), observing that "in the twenty-five years since Kaneshiro was decided, no federal circuit court of appeals has embraced its rationale." Id. Furthermore, since "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry," Harris concluded that its interpretation was consistent with the test articulated by the Fourth Circuit in Lovern. Harris, 425 F.3d at 694. Thus, at least in the view of the Ninth Circuit, the "clue" test and its subjective inquiry regarding "who knew what when," is incompatible with Lovern's objective standard. Id.; Lovern, 121 F.3d at 162.

**V.**

A bright-line test is consistent with the canon of case law that instructs courts to construe removal statutes narrowly in favor of remand, see Mulcahey, 29 F.3d at 151 (citing Shamrock Oil

**DIJKSTRA v. CARENBAUER, ET AL**                                    **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

& Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941)), and also guards against premature and protective removals. Furthermore, it ensures that removal only occurs once the facts supporting removal are evident, thereby minimizing the potential for a "cottage industry of removal litigation." Harris, 425 F.3d at 698.

**A.**

Applying a bright-line approach to the facts here leads to the conclusion that the defendants could not have ascertained that the amount in controversy exceeded $5 million based upon either the August 19th demand letter or the parties' August 23rd and 24th interrogatory responses. Dijkstra's August 19th demand letter notified the defendants that the class with potential claims against Wilshire consisted of 640 members, each of whom was demanding $1000, and that some members were seeking additional relief, including attorneys' fees and the cancellation of foreclosure debts. The letter did not identify specific class members, the value of their debts, or how many would be seeking this additional relief. Therefore, within its four corners, the letter demanded only $640,000, plus an indeterminate amount of additional damages.

Nor is there evidence that the defendants ignored other objective information when evaluating whether this demand letter

**DIJKSTRA v. CARENBAUER, ET AL**                                              **5:11CV152**

**MEMORANDUM OPINION AND ORDER**

provided a proper basis for removal. Unlike the facts in Dugdale, where the defendant possessed objective knowledge of a specific insurance policy from which it could have ascertained that the plaintiff's case involved a federal claim, the defendants here had no such information to illuminate the contents of Dijkstra's August 19th demand letter, which did not reference specific mortgages or loan accounts, and from which the defendants could not readily have known the circumstances of 640 unnamed class members, or the value of their potential damages. See 2006 WL 335628 at *1. Accordingly, in this Court's view, as of August 19, 2011, the defendants could have ascertained an amount in controversy equal only to the sum of Dijkstra's demands from May 25th, July 27th, and August 19th, which totaled $1,051,000, far short of CAFA's $5 million threshold.

**B.**

While less explicit than Dijkstra's demand letters, the parties' interrogatory responses on August 23rd and 24th nonetheless did communicate important information relevant to the amount in controversy. From the table of 851 loans closed by non-lawyers, the defendants could have ascertained that HLC faced 851 potential claims.[5] They also could have ascertained that each

---

[5] The defendants argue that, because Dijkstra's discovery response answered in the first person rather than expressly on behalf of the class, they could not have known that all class members would be seeking

**DIJKSTRA v. CARENBAUER, ET AL**  5:11CV152

**MEMORANDUM OPINION AND ORDER**

claimant intended to seek maximum statutory damages under the WVCCPA, as well as compensatory damages for annoyance, inconvenience, and emotional distress, punitive damages, attorneys' fees, and loan forgiveness.

Nothing within the four corners of these discovery responses, however, expressly stated an amount in controversy. Thus, it was necessary for the defendants to determine whether these documents illuminated other objective information from which they could then have ascertained that the case was removable. See Dugdale, 2006 WL 335628 at *6.

The defendants were responsible for knowing the applicable law, and that the WVCCPA authorizes up to $4500 for each statutory violation. As of August 24, they could have ascertained that the 851 class members would seek as much as $3,829,500 in statutory violations. See Caufield v. EMC Mortgage Corp., No. 2:11CV244, 2011 WL 2947039, at *1 n.1 (S.D.W. Va. Jul. 19, 2011) (finding that maximum inflation-adjusted penalty under § 46A-5-101 is $4500 per violation). As Dijkstra has conceded, however, the value of the remaining damages was not "readily ascertainable." (Dkt. No. 23-1 at 2). Thus, even viewing the plaintiff's argument most generously,

---

similar damages. Given that all parties understand this case to be a putative class action, that argument is unconvincing.

**DIJKSTRA v. CARENBAUER, ET AL**                                    5:11CV152

**MEMORANDUM OPINION AND ORDER**

as of August 29, 2011, the defendants could have ascertained at most an amount in controversy equal only to $4,880,500.

Accordingly, from the facts before it, the Court concludes that this case became removable only after the defendants received Dijkstra's September 29th letter demanding $4,255,000. When considered with all the other relevant information known to the defendants, it was this demand letter that, for the first time, put them on notice that the amount in controversy exceeded $5 million. The defendants' notice of removal therefore was timely and the plaintiff's motion to remand is **DENIED.**

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: May 1, 2012

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE